NORTHWESTERN REALTY COMPANY, Appellant, vs. HARDY, Respondent.

*March 3—March 23, 1915.*

*Landlord and tenant: Agreement to furnish heat: Breach: Justifica-*
*tion for quitting premises: Notice to landlord: Complaints to*
*janitor: Principal and agent.*

1. Where the lessee has agreed to furnish heat for leased rooms, a
   mere slight temporary inconvenience does not justify the tenant
   in throwing up his lease.  The breach must be substantial and
   of such duration that it can be said that the tenant has been de-
   prived of the full use and enjoyment of the leased property for
   a material period of time.
2. The tenant has no right in such a case to treat the lease as termi-
   nated until the lessor has failed, after being notified of the trou-
   ble, to remedy it within a reasonable time.
3. The evidence in this case is *held* not to show such a violation of
   the lessor's agreement as would justify the tenant in quitting
   the premises.
4. Complaints made to a janitor of a lack of heat were not in this
   case a sufficient notice to the lessor, it appearing that the agents
   in charge of the building, to whom the tenant paid his rent
   monthly, were well known to the tenant and occupied an office
   in the building near his rooms.

APPEAL from a judgment of the circuit court for Milwau-
kee county: W. J. TURNER, Circuit Judge.   *Reversed.*

On September 2, 1911, plaintiff entered into a written
lease with the defendant, who is a practicing dentist, for a
certain room in the office building owned by the plaintiff in
the city of Milwaukee.   The lease was to run for three years
at an annual rental of $300, payable in instalments of $25
on the first day of each month, and contained the following
clause: "The lessor is to furnish heat when required by the
season, accident and unavoidable delays excepted."   After
the lease was executed, by agreement of the parties partitions
were put in by the plaintiff so as to make three rooms instead
of one, and water tubing was extended in accordance with the

wishes of the defendant, to give him proper facilities for carrying on his work. Defendant continued to occupy the offices until the latter part of December, 1913, and paid his rent up to and including that month, at which time he moved out. Plaintiff brought this action to recover rent alleged to be due for the months of January, February, March, and April, 1914. By his answer to the complaint defendant alleged failure on the part of the plaintiff to comply with the provisions of the lease, in that it failed to properly heat defendant's offices, and that the same were frequently cold and at such temperature that he was unable to carry on his work, and that after frequent complaints to plaintiff's agents, without any action being taken to remedy the defects complained of, he notified such agents that he would abandon the premises, and did so on December 27, 1913. Defendant also counterclaimed for $150 damages alleged to have been sustained by him. The case was originally tried in the civil court, where defendant recovered judgment for $1 damages and $18.90 costs, and on appeal to the circuit court this judgment was affirmed. Plaintiff appeals.

For the appellant there was a brief by *Carroll & Carroll,* and oral argument by *Geo. E. Carroll.*

For the respondent there was a brief by *Hennessey & Hennessey,* attorneys, and *Vincent D. Hennessey,* of counsel, and oral argument by *V. D. Hennessey.*

BARNES, J. The jury returned a general verdict for the defendant, on the theory that he had the right to vacate the premises because of the failure of the plaintiff to heat the leased rooms according to the provisions of the lease. The substantial question arising on the appeal is: Was the defendant justified in taking the action which he did?

Agreements on the part of landlords to furnish heat for their tenants are common, and there are numerous cases reported which deal with such covenants. They are not all in

harmony, but the following propositions are supported by reason and authority:

1. A mere slight temporary inconvenience to the tenant does not justify him in throwing up his lease.    A trivial breach is not sufficient, but the breach must be substantial and of such duration that it can be said that the tenant has been deprived of the full use and enjoyment of the leased property for a material period of time.    *Silber v. Larkin,* 94 Wis. 9, 68 N. W. 406; *Wade v. Herndl,* 127 Wis. 544, 107 N. W. 4; *Johnson v. Tucker,* 136 Wis. 505, 508, 117 N. W. 1002; *Royce v. Guggenheim,* 106 Mass. 201, 203; *Seaboard R. Co. v. Fuller,* 33 Misc. 109, 67 N. Y. Supp. 146; *Parke v. Proby,* 130 Ill. App. 571; *Lynch v. Baldwin,* 69 Ill. 210; *Barrett v. Boddie,* 158 Ill. 479, 42 N. E. 143; *Miller v. Maguire,* 18 R. I. 770, 30 Atl. 966; *Rice v. Dudley,* 65 Ala. 68, 71.    We do not wish to be understood as approving all that is said in these cases.

2. The landlord is entitled to notice to the effect that the heat contracted for is not being furnished, and has a reasonable time after notice is given to remedy the defect complained of, and until such time has elapsed the tenant has no right to quit the premises because of the alleged breach. *Young v. Burhans,* 80 Wis. 438, 50 N. W. 343; *Merida R. Co. v. Coffin,* 123 N. Y. Supp. 120; *O'Gorman v. Harby,* 18 Misc. 228, 41 N. Y. Supp. 521; *Siebold v. Heyman,* 120 N. Y. Supp. 105; *Berlinger v. Macdonald,* 149 App. Div. 5, 133 N. Y. Supp. 522; *Russell v. Olson,* 22 N. Dak. 410, 133 N. W. 1030, 37 L. R. A. N. s. 1217, and cases cited; *Murrell v. Jackson,* 33 La. Ann. 1341; *Green v. Redding,* 92 Cal. 548, 29 Pac. 599; *Filkins v. Steele,* 124 Iowa, 742, 100 N. W. 851.

When this lease was made the parties did not contemplate that the landlord would station an employee in the leased rooms to see that a uniform and sufficient amount of heat was furnished at all times.    The lessee did not want any such fixture in his rooms.    It is not easy to avoid some fluctua-

tions in heat in this climate. The facts were peculiarly within the knowledge of the tenant. If he was being deprived of the full beneficial use of the space he had leased, it was his business to say so and it was the business of the landlord to remove the cause of complaint. But until a complaint was lodged and the lessor failed within a reasonable time to remedy the trouble complained of the tenant was not at liberty to treat the lease as terminated.

It is pretty apparent from the testimony in this case that the tenant quit the leased rooms for business reasons, and not because of the heat situation. The jury must have had some doubt upon the subject, else it would have awarded defendant the substantial damages that were proven without dispute, instead of returning a verdict for $1. It is true the defendant testified that his rooms were too cold at times, and so did some of his office girls and one or two of his patients. However, the real inquiry was: What was the plaintiff advised of and what did it do to remedy the complaints made? Here the case of the defendant is fatally weak. Accepting his own evidence as true, he complained of a frozen pipe in December, 1911, or January, 1912. The pipe was thawed out by the plaintiff. About a year later he again complained of pipes freezing in his office, and this complaint was attended to. Neither of these complaints related to the insufficiency of the heat furnished during office hours, but related to conditions which resulted from shutting the heat off at night when the office was not in use. The third and final complaint was made about eleven months later, and about November 10, 1913. On this last occasion defendant testified that he informed one of the agents who had charge of the building that his rooms were cold and that the oil in his dental chair had become so chilled that he could not manipulate it. He says the agent told him he would try and remedy it. Defendant's agents deny that any complaint was made to them about heating during the latter part of the year 1913. At the time this

alleged complaint was made defendant had paid his rent to December 1st.   Later he paid the rent for December and occupied the rooms until the latter part of the month.   We can find no testimony in the record in any way indicating that the rooms were not sufficiently and adequately heated from the time the alleged complaint of November, 1913, was made until the defendant quit the premises.   This evidence fails to show such a violation of any obligation assumed by the lessor as would justify the lessee in quitting the premises. These three widely separated delinquencies created no substantial breach of the agreement to heat, and there was neither refusal nor failure to remedy the conditions complained of.

The defendant testified that at times he complained to the janitor of lack of heat.   This was natural enough if more heat was desired when the complaint was made.   The building was not leased from the janitor, however, and there was nothing to show that he was an agent of the owner for the purpose of receiving notice that the terms of a lease were being violated, any more than he was for the purpose of receiving rent.   The agents in charge of the building were well known to the defendant and occupied the office directly under the one used by defendant and on the next floor below.   Rent was paid monthly to these agents for more than two years, and we think that an important notice of the kind here involved should have been served on them rather than on the janitor.   If the agents were chargeable with knowledge of what had been communicated to the janitor, the defendant has not shown any sufficient reason or justification for vacating the premises.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff as prayed in the complaint.